IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MAXLIFE, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No.: 4:22-cv-00303-RLW |
| | § | |
| ILLINOIS CASUALTY COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Maxlife, LLC, by and through undersigned counsel, and files its Suggestions in Opposition to Defendant's Motion for Summary Judgment. In support of the same, and because <u>material issues of fact exist as to all alleged causes of action against Defendant</u>, Plaintiff would show this Honorable Court as follows:

<u>**SUMMARY OF PLAINTIFF'S RESPONSE**</u>

The present matter involves a first party claim for damage suffered to Plaintiff's historic commercial property, located at 1027 Geyer Ave., St. Louis, MO 63104 (the "Property"). As the summary judgment evidence reflected and incorporated herein will confirm, said damage occurred solely due to "Earth Movement", which is a conspicuous peril for which many insurance policies routinely exclude coverage. However, in this instance, <u>Plaintiff paid a heightened premium in order to obtain coverage specifically for potential damage related to Earth Movement</u>. Defendant's efforts throughout the claims process to ignore this fact and nevertheless deny coverage, are both the key to Plaintiff's breach of contract claim as well as the principal reason that Defendant's conduct is objectively vexatious.

1

From the outset, it is critical to understand that Plaintiff made a timely filing of a <u>single claim</u> with Defendant for the subject loss in this matter.  After completing an inspection of the underlying damage at the Property, Defendant improperly and inexplicably split Plaintiff's original <u>single</u> claim into three separate claims.  This occurred despite the fact that Plaintiff had not made a claim under any one of the bases cited by Defendant.  This insurance carrier thereafter denied two of the three claims, citing inapplicable exclusions, as well as an unsubstantiated anti-concurrent causation clause.  Defendant then proceeded to grossly undervalue the third claim, ultimately paying Plaintiff a pittance in comparison to the amount of damage the Property suffered.

As the claims process progressed, Defendant's duplicity came to fruition.  Specifically, this insurance carrier came to realize that its basis for denying the claim, which rested upon an exclusion for Earth Movement, was inapplicable due to Plaintiff's purchase of additional coverage for that exact type of loss.  Quickly pivoting to find a new reason to avoid paying the claim, Defendant shoehorned its defense into a separate exclusion for "settlement", citing additional exclusionary language for cracking and expansion of the property's structural elements.  It also cited to other exclusions that are equally inapposite in evaluating coverage for Plaintiff's loss.

Despite all the above, Defendant now shamelessly seeks summary judgment relief as to Plaintiff's cause of action for breach of contract as well as its vexatious refusal claim, based upon the alleged applicability of the insurance policy's exclusionary clauses and its anti-concurrent causation clause, among others.  In doing so, Defendant claims that its allegedly undisputed facts demonstrate that there was no covered damage to the Plaintiff's property.  Defendant then argues that Plaintiff's vexatious refusal claim must therefore be dismissed, due to the exclusion of its underlying claims.

In response, Plaintiff's summary judgment evidence demonstrates the existence of genuine and material issues of fact as to whether the damage to Plaintiff's property is covered, which speaks directly to its breach of contract claim. As this Honorable Court will see, this is based upon expert observation, opinion, and conclusions, all of which negate the notion that any "settlement" or other excluded peril was a direct cause of damage to the Property. Further, based upon its above-described conduct, material issues of fact abound as to whether Defendant acted reasonably in its denial of Plaintiff's claim, which speaks directly to its cause of action for vexatious refusal. As such, Defendant's arguments are objectively without merit, or at the very least, material issues of fact exist as to all counts. Defendant's pending Motion for Summary Judgment must therefore be denied in its entirety.

## **INTRODUCTION**

The present claim arises from structural damage occurring to a commercial property, which was covered by an insurance policy purchased by Plaintiff from Defendant (the "Policy"). Plaintiff owned the Property and was named as an additional payee on the Policy, which promised to insure against damage to the Property caused by certain events, including the loss at issue. (*See* Plaintiff's Statement of Uncontroverted Facts, hereinafter "PSUF" at ¶ 2).

After suffering a loss at the Property due to Earth Movement, Plaintiff opened a claim with its carrier on or about February 2, 2021. Defendant thereafter sent one of its agents to inspect the Property, and also retained the services of an <u>unqualified</u> forensic engineer with Nederveld, Inc. ("Nederveld") to conduct an inspection of the Property. Nederveld submitted a report related to its inspection on or about April 3, 2021. Although Plaintiff had only reported one claim for Earth Movement, Nederveld's report concluded that there were somehow three separate areas of

damage: 1) a leak in the restroom; 2) a leak in the north portion of the building near the water heater; and 3) exterior brick damage related to wear and tear. (*See* PSUF ¶¶ 12-14).

Based on this report, Defendant split Plaintiff's single claim into three separate claims with three different dates of loss. The first claim is for a leaking water heater that had supposedly occurred on September 1, 2020 (i.e., BP44522). The claim for damage caused to the ladies' restroom reportedly originated on December 15, 2020 (i.e., BP 44523). The last claim for damage caused to the kitchen was, according to Defendant, due to a kitchen leak on January 26, 2021 (i.e., BP44120). Defendant denied the first two claims on May 3, 2021 (Claim Nos. BP44522 and BP44523) and issued a gross underpayment in the amount of $225.51 for the third claim on or about June 2, 2021 (Claim No. BP44120) (*See* RSUF ¶ 14-15).

Based upon the above, Plaintiff was forced to take legal action on March 14, 2022. *See* [Doc. 1].  After the completion of significant discovery, all of which has revealed that factual disputes exist as to literally every material issue in this case, Defendant decided to file the present motion for summary judgment on the very day of its deadline to do so.  Predictably, its grounds are that Plaintiff's claim falls under one (or many) exclusions of the Policy.  In support of its arguments, Defendant has cherry-picked specific language in the Plaintiff's reports to show that the damage to the Property falls under one or more of these exclusions.  However, as Plaintiff's summary judgment evidence will confirm, no such exclusions apply in this case.  Simply put, coverage was wrongfully denied.

Adding to the above, Defendant is relying on the umbrella language of certain anti-concurrent language in the Policy in an attempt to escape liability for the underlying claim.  In doing so, Defendant essentially argues that if it can just find one excluded peril that may have contributed to this loss, then it can avoid paying for the entire matter.  To that end, Plaintiff has

4

endured a claims process showing just how far Defendant will go to accomplish that feat.

Predictably, Defendant concluded by arguing that because Plaintiff's entire claim was excluded by certain inapplicable policy provisions, a carrier cannot be liable for vexatious refusal of coverage under Missouri Law. As with the evidence supporting Plaintiff's breach of contract claims, the same demonstrates exactly why Plaintiff's vexatious refusal claims must survive as well. Defendant's motion must therefore be denied in both respects.

Ultimately, Plaintiff submits that Defendant's actions in splitting the claim without Plaintiff's knowledge are patently unreasonable, and mark the beginning of a pattern of vexatious and result-oriented conduct in this matter. Plaintiff will further show that Defendant has not only failed to prove the application of the exclusions it relies upon, but failing in its attempt to use the Earth Movement exclusion that Plaintiff negated, it has simply cited any other exclusion that it believed could apply in an attempt to avoid paying this loss altogether. Rather than acknowledging and evaluating the true source of the damage to the Property, Defendant conducted its investigation with the aim of determining how it can weaponize the Policy's exclusions to its own benefit.

## STATEMENT OF FACTS

Plaintiff hereby attaches and incorporates herein its Statement of Uncontroverted Facts with separately numbered paragraphs for each fact, and appropriate citations to the record establishing each fact under the governing Local Rules for the United States District Court for the Eastern District of Missouri.

## STANDARD OF REVIEW

In order for Defendant to prevail on its summary judgment motion, it "must show the absence of any genuine dispute as to the material facts establishing each element of its claim, and based upon those facts, that it is entitled to judgment as a matter of law." *Vantage Credit Union*

*v. Chisholm*, 447 S.W.3d 740, 745 (Mo. App. E.D. 2014). It must also establish that affirmative defense as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Based upon the facts of this case, it has failed woefully in that endeavor.

Further, in considering a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Finally, the Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249. With this standard in mind, the evidence and authority below demonstrate the present matter to be rife with material issues of fact, as well as a host of genuine issues for trial. Defendant's summary judgment motion must therefore be denied in its entirety.

### **OBJECTIONS TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE**

Before addressing the substantial evidence in opposition to Defendant's summary judgment motion, Plaintiff formally objects to a specific piece of evidence offered by Defendant, which relates to the vast majority of is summary judgment argument. Ultimately, the testimonial evidence cited below speaks directly to Defendant's purported expert witness, Shaun Andres. Specifically, Mr. Andres' own testimony confirms that his opinions have no legitimate place within the summary judgment analysis, and should be stricken completely prior to trial.

Mr. Shaun Andres' sworn testimony revealed that Defendant's alleged causation expert was not a licensed professional engineer in the State of Missouri. *See attached* Exhibit T, sworn deposition of Shaun Andres, at pg. 8. (*See also* PSUF ¶¶ 28-30). *(All deposition transcript pages cited and attached are highlighted for this Honorable Court's convenience, as to the operative testimony relied upon.)* Similarly, Mr. Andres acknowledged that the causation analysis in the present matter, including the effect of the localized tree roots causing the failure of the Property

6

wall, were subject of the <u>structural engineering</u> field.  However, Mr. Andres has no significant background or qualification in structural engineering.  *See id.* at pp. 10-17 (highlighted portions).

With the above said, Mr. Andres testified that as he lacked the proper Missouri engineering licensing, he worked under a colleague from his company named Jerry Dahl.  However, Mr. Dahl also lacked the necessary background and specialization in the structural engineering field to be able to assist Mr. Andres.  *See id.*  Further, the report provided by Mr. Andres, and "signed off on" by Mr. Dahl, lacked the necessary engineering stamp that is required to validate the same.  *See id.* at pp. 23-24 *(highlighted portions)*.  As such, neither are qualified to offer testimony as to causation in this matter, the related expert report is deficient, and all related opinions and conclusions should be given no weight.

Ultimately, any credible testimony provided by Mr. Andres actually supported Plaintiff's theory that the neighboring tree roots and related Earth Movement caused the breach of the Property's support walls subject of Plaintiff's underlying claim.  *See id.* at pp. 35-37; pp. 44-49 *(highlighted portions)*.  Moreover, while Mr. Andres conceded the referenced tree roots and Earth Movement were likely a cause of the damage suffered at the Property, he nevertheless tried to state that it was not the primary cause.  *See id.*  However, when pressed on this issue, he could not identify a single other factor that could have been that primary cause, further supporting Plaintiff's position as to coverage.  *See id.*

## **ARGUMENT & AUTHORITY**

**A. Defendant's Exclusions for Settling, Cracking, Shrinkage or Expansion as well as Wear and Tear, Corrosion, and Deterioration are Inapplicable.**

From the outset, Defendant originally denied the subject claim under what it believed to be an operative Earth Movement exclusion. (*See* PSUF ¶¶ 17-19).  However, it later realized that during the time the Policy was bound, Plaintiff specifically purchased Earth Movement coverage,

7

just in case such a peril occurred.  This negated Defendant's entire argument regarding this particular exclusion, essentially forcing it to find another exclusion that it believed would thwart payment of this claim.  And that is exactly what Defendant did.  (*See* PSUF ¶¶ 17-23).

To this end, Defendant alleged that if not Earth Movement, then the loss was surely caused by "settlement, cracking, expansion, or contraction" of the building elements.  This worked well for Defendant, as it believed the same to fall under another Policy exclusion.  (*See* PSUF ¶¶ 17-25).  However, Defendant's interpretation of this exclusion was, and still is, objectively faulty.  Specifically, the carrier is claiming that this new exclusion applies because one or more of these four (4) listed issues caused damage to the Property, and therefore the claim is not owed.  But this is incorrect.  Proper summary judgment evidence reveals that Earth Movement was the cause of the damage, and not the settling, cracking, or other condition.  In fact, the latter <u>was simply the effect and manifestation</u> of what directly occurred due to Earth Movement, which was an objectively covered peril under the Policy sold to Plaintiff by Defendant.  (*See* PSUF ¶ 23).

To properly illustrate the deficiencies in Defendant's position as to coverage, we can readily utilize the analogy of a hail claim.  As with most property insurance policies, hail is a covered event.  Therefore, resulting damage from this peril is objectively covered.  If, for example, the hail caused cracking to the windows of a property, and the insurer cited cracking as an excluded cause of damage, then such would be an improper conclusion.  The carrier's reasoning would be inherently flawed.  Specifically, the loss <u>would</u> be covered because the hail, a covered peril, was the causal agent – just as Earth Movement is in this case.  The fact that there was cracking to the window (in our example), just as there was cracking in the support wall (in the instant case), makes no impact on whether the underlying event is covered, because cracking is the result – not the cause.

8

Defendant has cited *Williams v. State Farm Fire & Cas. Co.*, 514 S.W.2d 856, 858 (Mo. App. 1974), arguing that the language excluding settling, cracking, shrinkage, bulging or expansion barred any attempted recovery by the insured. Plaintiff respectfully submits that the precise conclusion arrived at by the Court is somewhat different. In the *Williams* case, the Court was considering the scope and meaning of the term "collapse." The policy in that case provided coverage for direct loss to the property covered caused by "*collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s) or any part thereof.*" *Id.*

The basic consideration before the Court in *Williams* was whether to consider the word collapse in its strictest sense or, to consider even partial collapses that could impair the integrity of the building. *Id.* While considering the same, the Court concluded that the word "collapse" was not ambiguous since it was specifically defined "as not including settling, cracking, shrinkage, bulging or expansion." *Id.* Therefore, the Court in *Williams* was considering the scope of the word "collapse" and not the scope of the words "settling, cracking, shrinkage, bulging or expansion."

Put simply, in the *Williams* case, the Plaintiff was trying to argue that a partial collapse would result in coverage. However, the court concluded that the language of the policy specifically excluded partial collapses by excluding damage caused by *settling, cracking, shrinkage, bulging or expansion.* In the present case, the Plaintiff is not seeking coverage for damage caused by "settling, cracking, shrinkage, bulging or expansion." Rather the Plaintiff contends that the expansion, contraction, and cracks are the effect of a cause that is clearly covered by a defined peril – that being "Earth Movement."

In addition to relying on the above case, the Defendant implies that the reports by both Plaintiff's expert and Shaun Andres (Defendant's "alleged" engineer), when read together, reach

9

the same conclusions and are contrary to the allegations in the Plaintiff's Complaint. However, this is not the case. Defendant is wrongfully trying to argue otherwise by focusing only on the concluding paragraphs of Mr. Schell's report. In reality, that report, when read as a whole, conflicts with Mr. Andres' report in many different ways, which have been highlighted in Plaintiff's Response in Partial Opposition to Defendant's Statement of Uncontroverted Facts ("RSUF"). They are further set forth below:

    First, in regard to the water heater, Mr. Schell states that at the time of the inspection, the water supply valve above the water heater was dripping and the ground at the base of the water heater was damp. Rather than attributing this to long-term corrosion, Mr. Schell found that the leak was fixed when one of the Plaintiff's agents/representatives tightened the joint at the valve and stopped the leak (*See* RSUF ¶¶ 6-11).

    Second*,* Mr. Andres concluded that that cracks to the Property appeared aged. The evidence for such aging includes weathered crack surfaces, debris collected on crack surfaces, and soiled surfaces that correspond to a chronic condition. However, Mr. Schell*,* after conducting a thorough examination of all the cracks in the exterior of the Property, concluded that the cracks were not aged (as concluded by Mr. Andres) and were <u>at most</u> only 4-years old*.* (*See* RSUF ¶¶ 6-11).

    Lastly, Defendant is relying on the <u>historic</u> nature of the Property to imply that the cracks formed were primarily due to age. In response, Mr. Schell cited one of the Plaintiff's representatives stating that he had examined the entire Property in August 2019 to repair any deficiencies to attract potential new bar owners.  Any substantial cracks would have been noticed at that time. Therefore, at the time this claim was raised, the cracks would have been two years old at most.  (*See* PSUF ¶¶ 24-25, specifically Exhibit P-A, cited within).  Mr. Schell also observed

that the brick within the cracks was still a relatively fresh salmon color in appearance with little to no darkening on the broken edges from prolonged exposure.  *See id.*

The above represents certain major differences between Mr. Schell's report and Mr. Andres' report. However, Defendant persists in stating that findings in both reports are the same based on the concluding paragraph in the Schell report, which states as follows:

> *"it is my professional opinion that the seepage of ground water has caused expansion and contraction and erosion of the clay soil below the limestone rubble foundation wall at the northwest corner of the Two Story Building. The expansion, contraction, and erosion of soil caused movement of the north foundation wall. This movement initiated the formation of cracks in the foundation wall…."*

(*See* PSUF ¶¶ 24-25).

Ultimately, instead of reading the statement as a whole, Defendant has selected certain words and phrases to state that the damage was caused by an exclusion an exclusion for all damage caused by settling, cracking, shrinkage or expansion. However, recall that Plaintiff is not seeking coverage for damage caused by "settling, cracking and expansion," but rather for these manifestations of damage, which are merely the effects of a covered event – Earth Movement.  As such, Defendant's argument is no legitimate basis for summary judgment relief, and its motion must therefore be denied.

Further, for the foregoing reasons, Defendant's exclusions for wear and tear, corrosion, and deterioration do not apply where Earth Movement is the cause of the covered damage.

**B. Defendant Misinterprets the Anti-Concurrent Causation Clause & Analysis.**

Defendant also relies on the anti-concurrent language in the exclusion clause, essentially arguing that even if the proximate cause of the damage to the Property is not excluded, Missouri courts have upheld the application of policy language contracting out of "concurrent causation" provisions to be unambiguous and enforceable. In other words, the Defendant seems to be

implying that: (a) the cracks to the exterior of the Property are excluded under the provisions of the Policy and; (b) assuming *in arguendo* that the cracks are not excluded, the water that caused the cracks to the Property fall within the ambit and scope of water seepage under the exclusion clause. To support this, the Defendant has again cherry-picked language from both, Plaintiff's Original Complaint [Doc. 1] and Mr. Schell's report. *See* Exhibit P-A. In doing so, Defendant focuses on the concluding words within the latter document, where Mr. Schell states that, *"the seepage of ground water has caused expansion and contraction."*

    a. In order to rebut the same, Plaintiff is reproducing the exclusion clause in full under Clause 3 a. and reads as follows:

    *"3. Exclusions*

    *a. We will not pay for loss or <u>damage caused directly or indirectly</u> by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area."*

(*See* Exhibit B at pg. 26 of 52.)

The Policy goes on to list a series of exclusions including (a) Ordinance of Law; (b) <u>Earth Movement</u>; (c) Government Action; (d) Nuclear Hazard; (e) Utility Services; (f) War and Military Action and (g) <u>Water</u>, etc. In addition, it lists a series of other situations where coverage is not possible under Clause 3b., one of which is exclusion for damage caused by Collapse of the Property (Clause 3.b (7)) and the other is damage caused by Settling, cracking, shrinkage or expansion (Clause 3.b (12)). These state as follows:

    *"(b)*

    *(7) Collapse, including any of the following conditions of property or any part of the property:*
    *(a) An abrupt falling down or caving in;*
    *(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or*

> *(c) Any <u>cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion</u> as such condition relates to (a) or (b) above.*
> *…….*
> *(12) Other Types Of Loss*
> *(a) Wear and tear;*
> *(b) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*
> *(c) Smog;*
> *(d) <u>Settling, cracking, shrinkage or expansion</u>."*

Defendant claims that the cracks caused to the exterior of the Property were excluded accordingly. However, Plaintiff's summary judgment evidence demonstrates conclusively that such cracks <u>do not constitute the cause of loss</u>. Again, such cracking is literally the visible result of a covered loss – that being Earth Movement, a peril which Plaintiff specifically added into its coverage under the Policy.

Specifically, the Policy has an endorsement for earthquake coverage bearing number BPEC 03 09 14, which specifically stated that the exclusion provided for Earth Movement does not apply. This should effectively mean that all damage caused by Earth Movement is covered under the Policy. In light of which, Plaintiff refers to the scope and definition of Earth Movement as specified in the Policy in Clause 3.a (2):

> *"Earth Movement*
> *(a) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;*
> *(b) Landslide, including any earth sinking, rising or shifting related to such event;*
> *(c) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;*
> *(d) Earth sinking (other than sinkhole collapse), rising or shifting **<u>including soil conditions which cause settling, cracking or other disarrangement of the foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.</u>**"*

Plaintiff submits that the damage to the Property as specified in the conclusion of Mr. Schell's report, falls within the scope of Clause 3.a (2)(d) and is therefore covered. Defendant, however, claims exclusion for water seepage is applicable because Plaintiff's engineer referred to

13

the phrase *"seepage of ground water"* (*See* Exhibit D at page 4). To elaborate, Plaintiff refers to the exclusion for Water as specified in the Exclusion clause below:

> " Water
>
> (a) Flood Water….
> (b) Mudslide or Mudflow…
> (c) Water that backs up from a sewer….
> (d) **Water under the ground surface pressing on, or flowing or seeping through**:
>     (i) Foundations, walls, floors or paved surfaces;
>     (ii) Basements, whether paved or not;
>     (iii) Doors, windows or other openings;"

Plaintiff submits that the damage caused to the Property is, once again, <u>solely</u> effect of Earth Movement, which (according to the Policy) includes <u>soil conditions like contraction, expansion, and the</u> **action of water under the ground surface**, <u>which causes settling, cracking or disarrangement of the foundations</u>. As such, then the anti-concurrent language in the Policy would not apply, as the same is applicable only when there are two or more causal events in the causal chain, with one being excluded and the other being covered under the Policy. As such, there is genuine issue of fact whether or not earth movement was the sole cause of damage. Moreover, if it is determined that Earth Movement is the sole cause of damage, then the anti-concurrent causation is not applicable.

### C. **Plaintiff's Claim for Vexatious Refusal Objectively Survives.**

Sections 375.296 and 375.420 allow penalties to be assessed against an insurer when it refuses to make payment, upon demand and in accordance with the policy, vexatiously, willfully and <u>without reasonable cause</u>. *Legg v. Certain Underwriters at Lloyd's of London,* 18 S.W.3d 379, 387 (Mo.App.W.D.1999). An insurer is permitted to question or contest its liability if it has reasonable cause to believe, and does believe, that it has no liability under the policy and that it has a meritorious defense. See *id.* at 387.

14

However, the test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person <u>at the time the insurer was asked for coverage</u>. See *Drury Co. v. Mo. United Sch. Ins. Counsel,* 455 S.W.3d 30, 38 (Mo.App.E.D. 2014). The same has been held in earlier cases like *DeWitt v. American Family Mutual Insurance Co.,* 667 S.W.2d 700, 710 (Mo. banc 1984) and *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 42 (Mo. banc 1976); where the Courts have held that for an insured to obtain a penalty for an insurance company's vexatious refusal to pay a claim, the insured must show that the insurance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial.

Generally, a question of reasonableness is a question of fact for the jury and not a question of law for the court. *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 109 (Mo.App.E.D.2004). The question of reasonableness can be determined as a matter of law only when based upon undisputed facts. *Id.* This is so because a question of fact exists <u>only when fair-minded people, exercising reasonable judgment, could reach different conclusions on the issue in controversy</u>. *Id.* When reasonable minds could not differ, summary judgment is properly granted. *Id*. Otherwise, summary judgment is refused. In the present case, the Defendant's actions would render any reasonable person to conclude that the refusal was vexatious.

## **CONCLUSION**

For the reasons set forth above in this Memorandum of Law, along with Plaintiff's Statement of Uncontroverted Facts in Opposition to Defendant's Motion for Summary Judgment, Plaintiff respectfully requests the Court DENY the Defendant's Motion for Summary Judgment, and for all further relief to which Plaintiff may be justly entitled.

                                        Respectfully submitted,

                                        */s/ Scott G. Hunziker*
                                        Scott G. Hunziker
                                        Missouri Bar No. 50400
                                        ZERBE, MILLER, FINGERET, FRANK & JADAV
                                        3009 Post Oak Blvd., Ste. 1700
                                        Houston, TX 77056
                                        Phone: (713) 350-3523
                                        Facsimile: (713) 350-3607
                                        shunziker@zmflaw.com

                                        **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument was forwarded pursuant to the Federal Rules of Civil Procedure on the following on August 14, 2023:

Corey L. Kraushaar #51792
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
ckraushaar@bjpc.com

                                        */s/ Scott G. Hunziker*
                                        Scott G. Hunziker