# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MAXLIFE, LLC, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    No. 4:22-CV-303 RLW |
| ILLINOIS CASUALTY COMPANY, | ) ) ) |
|     Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant Illinois Casualty Company's Motion for Summary Judgment. (ECF No. 30). Plaintiff opposes the motion and it is ready for disposition. (ECF No. 39). The Court will deny Defendant's motion for the reasons below.

### Background

Plaintiff Maxlife, LLC is a limited liability company based in St. Louis, Missouri. (ECF No. 1, ¶ 1). Defendant Illinois Casualty Company ("ICC") is an insurance company based in Illinois. *Id.* at ¶ 2. In Count I of the Complaint, Plaintiff asserts a breach-of-contract claim against Defendant for an allegedly wrongful denial of Plaintiff's insurance claim. *Id.* at ¶¶ 6-29. In Count II, Plaintiff brings a vexatious-refusal claim for Defendant's alleged failure to properly investigate the claim. *Id.* at ¶¶ 30-37. Plaintiff seeks damages and attorney's fees. *Id.*

### Legal Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id*. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)) (internal quotation marks omitted).

**Facts**

On August 1, 2019, Whale Shark LLC[1] entered into a lease agreement with Plaintiff for Plaintiff's property at 1027 Geyer Avenue, St. Louis, Missouri 63104 (the "Property"). (ECF No. 32 at ¶ 1; ECF No. 32-1). The lease agreement required Whale Shark to obtain specific insurance coverage and to name Plaintiff as an additional insured. (ECF No. 1 at ¶ 9; ECF No. 32-1 at ¶ 13). To that end, Whale Shark purchased policy number BP43598 from Defendant with coverage from August 5, 2020, to August 5, 2021. (ECF No. 1-1 at 1). The policy identifies Plaintiff as the designated loss payee. *Id.* at 67. The Policy covers "direct physical loss of or damage to [the Property] caused by or resulting from any Covered Cause of Loss." *Id.* at 15. The Policy defines "Covered Causes of Loss" as any direct physical loss except those excluded by Paragraph C.3. or limited by Paragraph C.2. *Id.* at 40.

Paragraph C.3. states, in relevant part:

> **a.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

> • • •

> **(2) Earth Movement**

> • • •

> **(d) Earth Sinking** (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of the foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

---

[1] Plaintiff refers to its former lessee as both "Whaleshark" and "Whale Shark." (ECF No. 1 at ¶¶ 9, 11, 13). The Court will adopt the latter.

• • •

**(7) Water**

• • •

**(c)** Water that backs up or overflows or is otherwise discharged from a "sewer", "drain" or sump pump or related equipment except as provided in the Additional Coverage – "Sewer" Back Up;

**(d)** Water under the ground surface pressing on, or flowing or seeping through: **(i)** Foundations, walls, floors or paved surfaces; **(ii)** Basements, whether paved or not; **(iii)** Doors, windows or other openings;

• • •

**(f)** Water includes continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more.

This exclusion applies whether any of the above, in Paragraphs **(a)** through **(f)**, is caused by an act of nature or is otherwise caused.

• • •

**b.** We will not pay for loss or damage caused by or resulting from any of the following:

• • •

**(7) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

>**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(a)** or **(b)** above.
>
>But if collapse results in a Covered Cause Of Loss at the described "premises", we will pay for the loss or damage caused by that Covered Cause Of Loss.
>
>This Exclusion, **(7)** does not apply:
>
>**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or
>
>**(b)** To collapse caused by one or more of the following: **(i)** The "specified causes of loss"; **(ii)** Breakage of building glass; **(iii)** weight of rain that collects on a roof; or **(iv)** Weight of people or personal property.
>
>• • •
>
>**(12) Other Types Of Loss**
>
>**(a)** Wear and tear;
>
>**(b)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
>• • •
>
>**(d)** Settling, cracking, shrinkage or expansion;
>
>• • •

(ECF No. 1-1, pp. 40-49).

Prior to Whale Shark's purchase of policy number BP43598, Plaintiff had purchased policy number BP41709 with an effective period of April 29, 2019, to April 29, 2020. *Id.* at 180. An endorsement to that policy states that "[t]he Exclusion **C.3.a.(2), Earth Movement**, does not apply." *Id.* at 304 (emphasis original); (ECF No. 48 at ¶ 5).

5

Whale Shark operated the Great Grizzly Bear restaurant at the Property until October 13, 2020, when it closed due to the COVID-19 pandemic. (ECF No. 1 at ¶¶ 12, 13). Sometime thereafter, Plaintiff noticed that water usage at the Property had not reduced by a commensurate amount. *Id.* After ruling out possible issues with the water meter, Plaintiff retained a plumber who inspected the property on January 27, 2021. (ECF No. 40 at ¶ 12; ECF No. 48 at ¶ 12). The plumber discovered that the crawlspace under the kitchen was extremely muddy and opined that the foundation was "washed out" and exposed. *Id.* The plumber noted that the floor and subfloor of the kitchen were rotted from long-term exposure to water. *Id.* The plumber also discovered an active leak "in the area of the restrooms." *Id.*

Another plumber visited the Property on February 2, 2021, and located a leaking pipe inside the wall where the women's toilets connect to the water supply. (ECF No. 40-26 at 5; ECF No. 48 at ¶ 13). The plumber identified another leak under the kitchen floor and a third under the kitchen sink. *Id.* According to Plaintiff, the plumber repaired each leak. *Id.* After the plumber's inspection, Plaintiff examined the exterior wall of the Property and discovered "a crack from the basement wall to the roof." (ECF No. 1 at ¶ 13).

Plaintiff opened a claim with Defendant on the same day. *Id.* at ¶ 14.[2] In response, Defendant retained Shaun Andres, a professional engineer with Nederveld, Inc., to inspect the Property. (ECF No. 32 at ¶ 7). Mr. Andres concluded that there were three areas of damage at the Property: (1) a leak in the women's restroom, (2) a leak in the north portion of the building near the water heater, and (3) cracking in the exterior brick wall. (ECF No. 1 at ¶ 15; ECF No. 32-5 at 5-6). Defendant separated Plaintiff's claim into three—Claim No. BP44522 relating to the leak from the water heater (date of loss September 1, 2020); Claim No. BP44523 relating to the leak

---

[2] Perplexingly, neither party has filed a copy of Plaintiff's original claim.

near the women's restroom (date of loss December 15, 2020); and Claim No. BP44120 relating to a leak in the kitchen (date of loss January 26, 2021). (ECF No. 1 at ¶ 16; ECF No. 32 at ¶ 9; ECF Nos. 32-6; 32-7; 32-8).

Defendant denied Claim Nos. BP44522 and BP44523 on May 3, 2021. (ECF No. 1 at ¶ 17; ECF No. 32-7). The denial letter stated that the bathroom leak was not covered by Plaintiff's policy because it "occurred over a period that would have been longer than 14 days." (ECF No. 32-7). The letter also cited Exclusion C.3.a.(2), Earth Movement, as grounds for denying the leak from the water heater, Claim No. BP446522. *Id.* On June 1, 2021, Defendant issued a payment of $225.51 for Claim No. BP44120, the kitchen leak. (ECF No. 1 at ¶ 17; ECF No. 32-6). In a letter dated August 24, 2021, Defendant acknowledged that it had improperly relied upon the earth-movement exclusion as a basis for denial of the water-heater leak and agreed that the exclusion was inapplicable under Plaintiff's endorsement. (ECF No. 1 at ¶ 22; ECF No. 32-8). Even so, Defendant denied Claim No. BP44522. *Id.*

At some point after the denial, Plaintiff retained professional engineer Mark R. Schell, who inspected the Property on or about August 16, 2021. (ECF No. 40 at ¶ 24; ECF No. 32 at ¶ 12). In his report dated September 8, 2021, Mr. Schell states:

> Based on observations, measurements, and information gathered from people familiar with the history of the Building, it is my professional opinion that the seepage of ground water has caused expansion and contraction and erosion of the clay soil below the limestone rubble foundation wall at the northwest corner of the Two Story Building. The expansion, contraction, and erosion of soil caused movement of the north foundation wall. This movement initiated the formation of cracks in the foundation wall.

(ECF No. 40 at ¶ 24; ECF Nos. 40-17; 40-18).

Plaintiff also hired public adjuster James Bushart to inspect the property. (ECF No 40 at ¶ 17, ECF No. 48 at ¶ 17). Plaintiff asserts that Mr. Bushart uncovered several inconsistencies in

7

Defendant's application of the policy exclusions. (ECF No. 40 at ¶¶ 17-21). Plaintiff then retained ISC Contracting, Inc., to provide an estimate for necessary structural repairs, which came to a sum of $605,430.00. (ECF No. 1 at ¶ 20; ECF No. 32 at ¶ 16; ECF No. 32-12; ECF No. 40 at ¶ 25). Defendant considered some of this new information but ultimately decided to uphold its previous denials. (ECF No. 40-24).

## Discussion

In its Motion for Summary Judgment, Defendant asserts that Plaintiff's claims must fail because Plaintiff's policies do not cover the damage in question. (ECF No. 31 at 4). Plaintiff counters that summary judgment is unavailable due to the existence of genuine issues of material fact. (ECF No. 39 at 3). The Court agrees with Plaintiff.

### I. Breach of Contract

"State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). "Under Missouri law, courts apply the general rules of contract construction when interpreting an insurance policy." *Munroe v. Cont'l W. Ins. Co.*, 735 F.3d 783, 786 (8th Cir. 2013) (citing *Peters v. Emps. Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993)). If the policy language is unambiguous, courts will enforce it as written, barring any relevant statutory or policy considerations. *Id.* (citing *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991)).

If ambiguity exists, courts will interpret the policy in favor of the insured. *Id.* (citing *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007)). Ambiguity exists "when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Id.* (quoting *Burns v.*

8

*Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010)) (internal quotation marks omitted). Courts must evaluate the policy as a whole and should not interpret provisions in isolation. *Id.* (citing *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009)). Courts should strive to give each provision a reasonable meaning and avoid interpretations that render a provision useless or redundant. *Id.* (citing *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008)).

Generally, it is the insured's burden to establish coverage under the policy. *Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co.*, 880 F.3d 1007, 1009 (8th Cir. 2018) (citing *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015)). But Missouri courts strictly construe exclusionary clauses against the drafter, who bears the burden of showing that an exclusion applies. *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 671 (8th Cir. 2013) (citing *Burns*, 303 S.W.3d at 509-10). Here, because Defendant seeks to escape coverage based on policy exclusions, it must establish the applicability of the exclusions. *See Hullverson L. Firm, P.C. v. Liberty Ins. Underwriters, Inc.*, 25 F. Supp. 3d 1185, 1197 (E.D. Mo. 2014) (citing *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 482 (Mo. Ct. App. 1998)).

    a. **Specific Exclusions**

Defendant argues that Plaintiff's claim resulted from "the cracking and settling of the foundation wall at the subject property." (ECF No. 31 at 6). Defendant avers that the policy specifically excludes coverage for claims involving settling, cracking, shrinkage, or expansion. *Id.* Defendant also contends that Plaintiff's claims are barred by exclusions for water seepage, wear and tear, corrosion, and deterioration. *Id.* at 10-14. Plaintiff responds that the damages to the Property arise from earth movement—not settling, cracking, shrinkage, expansion, or any other excluded cause—and that any settling or cracking "was simply the effect and manifestation" of earth movement. (ECF No. 39 at 8).

It is undisputed that Defendant initially denied Claim No. BP446522 based on the earth-movement exclusion. (ECF No. 32-7). It is also undisputed that Defendant did so in error because that exclusion is inapplicable under Plaintiff's endorsement. (ECF No. 1 at ¶ 22; ECF No. 32-8). What remains in dispute, however, is the applicability of other exclusions—particularly the "settling, cracking, shrinkage, or expansion" exclusion found in Paragraph C.3.b.(12)(d) of the policies. The Court must now consider whether these disputes raise any genuine issues of material fact.

The applicability of the "settling" exclusion, or any other exclusion, necessarily depends on the cause of Plaintiff's asserted loss. Defendant cites language from Mr. Andres and Mr. Schell to establish that it properly relied upon the exclusion. (ECF No. 31 at 8). But Plaintiff argues that Mr. Schell's report, when read in its entirety, conflicts with Mr. Andres's report in several key respects. (ECF No. 39 at 9-10).

In his report, Mr. Andres explains that he "observed numerous cracks extending from the wall fenestrations including windows as well as soil stacks and doors. The cracks appeared aged. The evidence of aging includes weathered crack surfaces, debris collected on crack surfaces, and soiled surfaces that correspond to a chronic condition." (ECF No. 32-5 at 6).

Mr. Schell draws a somewhat different conclusion in his report:

> The cracks between the 1st and 2nd story windows of the west wall of the Two Story Building appear to be relatively recent. These cracks pass through grout joints that exhibit both old grout and grout from relatively recent tuck pointing. Bill Stackovic stated that he had tuck pointed portions of the brick masonry in 2016. The brick exposed within the crack appears to be of clean natural color with no discernable discoloration from prolonged exposure. Since the cracks pass through the joints that were tuck pointed in 2017, we know that the cracks formed after the tuck pointing was conducted and are therefore less than five years old.

(ECF No. 32-9 at 3). Mr. Schell further notes that "[t]he north and west limestone rubble foundation walls within the crawl space at the northwest corner of the Two Story Building exhibit deterioration from movement and water seepage." *Id.* at 4 (emphasis added).

The question of what ultimately caused the damage to the Property will determine the outcome of this case. Thus, the parties' dispute over causation precludes summary judgment. *See Anderson*, 477 at 248. Viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could return a verdict in Plaintiff's favor. *Id.* Simply put, there remain genuine issues for trial.

### b. Anti-Concurrent Causation

Defendant argues that even if there is a covered cause for Plaintiff's loss, the claims are nonetheless barred under the anti-concurrent causation language in Paragraph C.3.a. (ECF No. 31 at 8). According to Defendant, it is immaterial whether Plaintiff's loss was the result of earth movement because it was also the result of at least one excluded cause. *Id.* Plaintiff counters that earth movement was the sole cause of the damage to the Property. (ECF No. 39 at 14).

On the evidence before the Court, a reasonable jury could conclude that one or more exclusions apply to Plaintiff's claims. But a reasonable jury could also conclude the opposite. The Court's function at this stage is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Drawing all justifiable inferences in Plaintiff's favor, the Court finds that a genuine issue remains for trial. Accordingly, the Court will deny Defendant's Motion for Summary Judgment on Plaintiff's breach-of-contract claim.

## II. Vexatious Refusal

"Missouri law provides that an insured may recover penalties and attorney fees when an insurer denies a claim without reasonable cause or excuse." *Refrigeration Supplies, Inc. v. Acadia*

11

*Ins. Co.*, 507 F. Supp. 3d 1096, 1105 (E.D. Mo. 2020) (quoting *United Fire & Cas. Co. v. Historic Pres. Trust*, 265 F.3d 722, 729 (8th Cir. 2001)) (internal quotation marks omitted). "To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Id.* (quoting *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 394 (Mo. Ct. App. 1993)) (internal quotation marks omitted). "Generally, whether an insurer acted reasonably is a question of fact for the jury, and thus is improper for a court to determine in granting a summary judgment." *Id.* (quoting *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 516 (Mo. Ct. App. 2014)) (internal quotation marks omitted). But where the underlying facts are undisputed, "that question of fact becomes a question of law for the court to properly decide." *Id.*

Defendant asserts that summary judgment is appropriate on Plaintiff's vexatious-refusal claim because Defendant properly denied Plaintiff's claims. (ECF No. 31 at 15). But as explained above, the applicability of the various policy exclusions remains in dispute. If Defendant improperly denied Plaintiff's claims, the next question will be whether Defendant acted reasonably in doing so. *Refrigeration Supplies*, 507 F. Supp. 3d. at 1105 (citing *May & May Trucking*, 429 S.W.3d at 516). Whether an insurer acted reasonably is a question of fact for the jury. *Id.* The Court will deny Defendant's Motion for Summary Judgment on Plaintiff's vexatious-refusal claim.

## Conclusion

Plaintiff has established the existence of genuine issues of material fact. Thus, the Court must deny Defendant's Motion for Summary Judgment. (ECF No. 30). *See Anderson*, 477 U.S. at 248.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**. (ECF No. 30).

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 11th day of December, 2023.